09-4344-cr
United States v. Espinal (Laiz)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2010

(Submitted: January 18, 2011          Decided: March 7, 2011)

Docket No. 09-4344-cr

UNITED STATES OF AMERICA,

*Appellee*,

— v.—

JOSE D. ESPINAL, also known as NANO, CESAR DAVID VALDEZ-CASTRO, also known as
DAVID, also known as CESAR D. VALDEZ-CASTRO, also known as MALICIA,

*Defendants*,

SANTO LAIZ, also known as MARTIN,

*Defendant-Appellant*.[*]

B e f o r e:
WALKER, STRAUB, AND LYNCH, *Circuit Judges*.

Defendant-appellant Santo Laiz pled guilty to conspiring to distribute and

possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a) and 846,

---

[*] The Clerk of the Court is directed to amend the official caption to conform with the caption above. The official caption of the case, utilized in the briefs of both parties, has heretofore stated the defendant-appellant's name as Santa Laiz. The text of the briefs, however, and all other references in the record, refer to him as Santo Laiz.

and was sentenced principally to twenty years' imprisonment. He appeals his conviction, contending that his plea was involuntary, and also challenges his sentence, arguing that the prosecution failed to prove beyond a reasonable doubt the facts underlying a prior felony information used to enhance his sentence under 21 U.S.C. § 851. We conclude that Laiz's guilty plea was voluntary; however, we vacate his sentence and remand for resentencing.

VACATED AND REMANDED.

————————

ROBERT J. BOYLE, New York, New York, *for Defendant-Appellant*.

DANIEL A. SPECTOR, SUSAN CORKERY, Assistant United States Attorneys, *for* PREET BHARARA, United States Attorney for the Southern District of New York, *for Appellee*.

————————

GERARD E. LYNCH, *Circuit Judge*:

Santo Laiz pled guilty in the Eastern District of New York (Arthur D. Spatt, *J.*) to possessing with intent to distribute cocaine, and conspiring to do so, in violation of 21 U.S.C. §§ 841(a) and 846, and was sentenced principally to twenty years' imprisonment. He appeals his conviction, contending that his plea was involuntary. He also challenges his sentence, arguing that the prosecution failed to prove beyond a reasonable doubt the facts underlying a prior felony information used to enhance his sentence under 21 U.S.C. § 851. We find that Laiz's guilty plea was voluntary, and therefore affirm his conviction. However, for the reasons discussed below, we vacate his sentence and remand for resentencing.

## I. **Conviction**

Laiz argues that his guilty plea was rendered involuntary because he received confusing and misleading information about the immigration consequences of his conviction. The argument is unavailing.

Immediately prior to jury selection on October 11, 2006, with Magistrate Judge E. Thomas Boyle presiding, Laiz and his co-defendant, Jose D. Espinal, pled guilty to the charges in the superseding indictment. At the beginning of the plea proceeding, the court asked Laiz and Espinal whether they were United States citizens. Each said "no." The following colloquy then ensued:

> COURT: The crimes that you are going to be pleading guilty to here . . . carry what is called mandatory deportation. That means it is certain, it's automatic, because of the nature of the crimes to which you are pleading guilty. Have you discussed that with your respective attorneys?
>
> DEFENDANT ESPINAL: Yes, sir.
>
> DEFENDANT LAIZ: Yes, sir.
>
> COURT: And you understand that that is a mandatory consequence of any plea that is entered to the charges before this Court?
>
> DEFENDANT ESPINAL: Yes, your honor.
>
> DEFENDANT LAIZ: Yes.

Later in the same proceeding, the prosecutor noted that Laiz faced different statutory penalties than Espinal – specifically, that the mandatory minimum sentence applicable to Laiz was twenty years in prison, rather than ten – because a prior felony information had been filed against him. The transcript reflects that in the course of this

3

discussion, the prosecutor stated that "[t]he deportation penalty the Court articulated also doesn't apply to Mr. Laiz." That was incorrect, because Laiz is not a United States citizen and the deportation penalty therefore did apply to him, as the court had previously stated.

In a submission filed and served on Laiz before sentencing, the prosecutor pointed out the mistake, suggesting that it was a "typographical error" in the transcript. Laiz did not respond. Again at the sentencing proceeding, the prosecutor called attention to the apparent error, stating that although he did not have a perfectly clear recollection of the plea proceeding, "I believe that's a typographical error and I believe as is indicated earlier in the transcript Mr. Laiz was apprised of the deportation penalty. But I want to raise this so there's no issue and that the defendant obviously understands that deportation is mandatory in this case." The court stated, "Well, I don't know what, at this late stage, what you are going to do, except correct the record. That's all. I'm not going to get into that." Laiz again failed to respond in any way. Neither the government nor defense counsel addressed the issue further.

Laiz argues on appeal that his conviction should be vacated because he received contradictory information about the immigration consequences of his conviction, in violation of Rule 11 of the Federal Rules of Criminal Procedure, rendering his plea involuntary. Because Laiz never sought to withdraw his plea, and did not object at any time or in any way to the alleged Rule 11 violation in the district court, we review for "plain error." United States v. Vaval, 404 F.3d 144, 151 (2d Cir. 2005). "In the context

4

of a Rule 11 violation, to show plain error, a defendant must establish that the violation affected substantial rights and that there is 'a reasonable probability that, but for the error, he would not have entered the plea.'" Id., quoting United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004). Absent a finding of fact by the district court that the transcript was incorrect, we assume for purposes of this appeal that the transcript accurately reported the prosecutor's words. See 28 U.S.C. § 753(b) ("The transcript in any case certified by the reporter . . . shall be deemed prima facie a correct statement of the testimony taken and proceedings had."); Abatino v. United States, 750 F.2d 1442, 1445 (9th Cir. 1985) ("The reporter's transcript of a trial is presumed to be accurate.").

Laiz cannot show that but for the prosecutor's mistake he would not have pled guilty. He argues that he entered his plea reluctantly, and that if he had clearly understood the immigration consequences of his conviction, he would not have pled, because deportation would separate him from his family. But this argument is unpersuasive in the face of the actual record below. When the court apprised him of the deportation penalty at the outset of the plea proceeding, he said that he understood that deportation was mandatory and that he had discussed the issue with his attorney, and he expressed no reluctance to go forward. After the plea had been entered but before sentence was imposed, the government twice noted its erroneous statement during the plea colloquy – once in its sentencing submission and once at the sentencing proceeding. Nevertheless, Laiz never gave the slightest indication that he was surprised by this information, or that he had relied in any way on the prosecutor's misstatement, and he

5

never sought to withdraw his plea.  On these facts, we cannot say that there is a reasonable probability that Laiz would not have pled guilty absent the prosecutor's misstatement.  We therefore affirm his conviction.

**II.  Sentence**

Laiz next argues that we should vacate his sentence and strike the prior felony information used to enhance it, because the government failed to prove beyond a reasonable doubt that he had the requisite prior conviction.  That claim is not so easily dismissed.

A.  Background

Laiz was indicted on November 16, 2005.  On September 7, 2006, the government advised him that if he did not plead guilty by September 15, it would file a prior felony information pursuant to 21 U.S.C. § 851(a).  Filing such an information would, among other things, enhance the applicable mandatory minimum sentence from ten years in prison to twenty.[1]  Laiz did not plead guilty by the government's deadline, and on October 3, 2006, the government filed the prior felony information, alleging that Laiz had been convicted of a felony drug offense under the name "Jose Luis Lai" in Lawrence,

---

[1] Laiz pled guilty to violating 21 U.S.C. § 841.  That crime carries a mandatory minimum sentence of ten years' imprisonment in most cases, but if the defendant is convicted "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years." 21 U.S.C. § 841(b).  The maximum sentence for such a crime is life imprisonment in either case.  The procedures that must be followed before the enhanced sentence may be imposed are set forth in 21 U.S.C. § 851.

Massachusetts, on November 8, 1993. As discussed above, Laiz nevertheless did eventually plead guilty. During the guilty plea proceeding, the magistrate judge advised Laiz of the prior felony information, and made sure that Laiz understood that by virtue of its filing, he faced an enhanced mandatory minimum sentence. However, while the magistrate judge elicited Laiz's admission that he was guilty of the offense to which he was pleading guilty, the magistrate judge did not ask whether Laiz admitted to having previously been convicted. After the plea was entered, a sentencing date was scheduled.

Prior to sentencing, Laiz and his attorney made separate submissions raising various legal challenges to the propriety of the prior felony information, but neither submission clearly denied the information's allegation that Laiz had in fact been convicted of the prior narcotics felony. Apparently concerned that the record was somewhat ambiguous with respect to Laiz's position concerning the prior felony, the prosecutor sought clarification, initially stating his "understanding that the defendant . . . is not challenging, as a factual matter, the [prior] conviction." When the court asked defense counsel if that understanding was correct, counsel responded that he had "no grounds to believe that Mr. Laiz was not convicted," but that he had not verified the conviction himself, and that he was "taking the word of the government . . . [and] of the probation department."

At that point in the proceeding, Laiz still had not been asked formally to affirm or deny the conviction. Rather than make that inquiry, upon hearing defense counsel's

response, the district court asked the prosecutor how the government knew of the defendant's prior conviction.  The prosecutor responded by handing up two documents.  The first, a Massachusetts rap sheet, states on its face that because it is "not supported by fingerprints," the reader should "check that the name referenced below matches the name and date of birth of the person requested."  The rap sheet indicated that one "Jose Luis Lai," also known as "Jose Pichardo," "Santo Ramon Laz," "Elias DeJesus," and "Santo Ramon Laiz," with a birthdate of December 3, 1964, had been convicted in Massachusetts on November 8, 1993, for distributing cocaine, possessing heroin with the intent to distribute, and conspiracy to distribute controlled substances.  The government also produced a Massachusetts docket sheet indicating a conviction, on the same date and for similar offenses, of an individual named "Jose Pichardo," also known as "Jose Luis Laz," "Santo Ramon Laz," and "Elias DeJesus Alberto," with the same birthdate.

The personal information on these documents is not entirely consistent with that attributed to Laiz in the presentence report ("PSR").  Although the rap sheet and the Massachusetts docket sheet give birthdates of December 3, 1964, the PSR gives Laiz's birthdate as January 1, 1965.  While three of the aliases listed in the Massachusetts documents – Santo Ramon Laz, Santo Ramon Laiz, and Jose Pichardo – are similar (but not identical) to names that the PSR says Laiz has used,[2] four others – Jose Luis Lai, Jose

_____

[2] According to the PSR, the appellant, who was indicted as Santo Laiz, was born "Jose Pichado."  The name "Santa" Laiz, which appears in the original caption of the case in this Court, and is used on the cover of both parties' briefs without comment by either side, appears nowhere in the record.

8

Luis Laz, Elias DeJesus, and Elias DeJesus Alberto – are not similar to names identified with Laiz in the indictment or PSR. The government did not state on the record how it came to associate the rap sheet and docket sheet with Laiz, and the documents contain no fingerprints, photographs, descriptions, or biographical data connecting them to Laiz.

The court examined the documents, indicating at several points that it was having difficulty reading or understanding portions of them. After reviewing the documents, and without making any finding as to what they did or did not prove, the court addressed defense counsel, again asking whether counsel was "raising any question about the fact that your client was convicted of this felony in 1993." Once again, defense counsel explained that he was "relying on the government's information" as to whether Laiz had been convicted "of the type of crime that would double his sentence," noting that although Laiz admitted that he had been convicted and served time in prison, he "[didn't] know from felonies, misdemeanors, drug cases as opposed to other cases, . . . different forms of drug cases, and so forth."

Up to that time, Laiz still had never been asked formally to affirm or deny whether he had indeed previously been convicted of a narcotics felony as charged in the prior felony information. But after the above colloquy, the prosecutor noted that the statute required that the defendant be asked to make such an affirmation or denial, see 21 U.S.C. § 851(b), and requested that the district court make the inquiry called for by the statute. However, when the district court finally asked him to affirm or deny the prior felony information allegations, Laiz, on his attorney's advice to remain silent, did neither.

9

The prosecutor asked the court to consider Laiz's silence an affirmance. But the court stated, "I can't say that I will call that an affirmance. I call that a denial of whether to affirm or deny, a refusal, if you will, on constitutional grounds." The court made clear that it did not believe that Laiz had a right to "refuse to affirm or deny on constitutional grounds," and announced an intention to "proceed with th[e] sentencing" after a lunch recess.

After lunch, the judge overruled Laiz's written objections to the applicability of the enhanced minimum sentence, found that sentence applicable, and sentenced Laiz to the minimum term of twenty years in prison, explicitly noting that he "ha[d] no choice for this sentence." While it is clear that the court believed that the enhanced minimum applied, it never explicitly found that Laiz was in fact the person named in the Massachusetts rap sheet and docket sheet. In the post-recess session, the court noted, without objection, that it had "already made a finding that there was a prior felony which could bring forth the prior felony information." But it is not clear from the record that the court had made such a finding. The closest thing to a fact finding was the following remark by the court, in the course of rejecting Laiz's claim of a constitutional right not to affirm or deny the conviction:

> But from what I see here, which I will put into evidence as an exhibit in this sentencing, namely the record given to me by the probation officer of this crime and the guilty finding as of November 8, 1993, and the types of crimes involved, I'm going to rule that notwithstanding the defendant's refusal to either affirm or deny, I'm going to proceed with this sentencing.

## B. Discussion

### 1. Laiz's Sufficiency Argument

On appeal, Laiz argues that "[t]he proof was insufficient to establish that [he] was the defendant in the Massachusetts case set forth in the Prior Felony Information." We acknowledge that the evidence is not beyond question. The rap sheet states on its face that it has not been verified by a fingerprint search, the personal information in the Massachusetts documents does not exactly match Laiz's, and the record says nothing about how the government came to associate those documents with Laiz. It is hardly inconceivable that two drug dealers might have adopted the same or similar names. Still, in light of the deference due to a district court's determination of the facts, and the "heavy burden" an appellant faces in a sufficiency challenge, see United States v. Abu-Jihaad, 630 F.3d 102, 135 (2d Cir. 2010) (internal quotation marks omitted), we would be hard pressed to find the evidence insufficient had the district court made a clear finding, after an evidentiary hearing, that Laiz was indeed the person convicted in Massachusetts in 1993. As noted above, however, the district court did not clearly make such a finding, nor is it clear that the court undertook to hold a hearing.

Moreover, to the extent that the evidentiary record does not conclusively establish that Laiz had been convicted of a felony, it is not clear that the government had a full and fair opportunity to present its best evidence to the sentencing court. Before the sentencing proceeding, Laiz had not explicitly challenged the fact of the prior conviction, and the government was not on notice that it would have to prove the fact of the

11

conviction on that day. Only when the government asked the court to clarify whether Laiz disputed the prior felony did the court ask the government for its evidence on the spot, before establishing whether Laiz denied the conviction. While the government managed to produce some evidence, it did not have a fair opportunity to gather and present its proof. Absent such an opportunity, we do not think it appropriate to decide the sufficiency of the government's evidence on this appeal. Nevertheless, we conclude that the sentence may not stand, and the case must be remanded for resentencing, because the procedures undertaken here fell short in several respects of those required by 21 U.S.C. § 851.

## 2. Procedural Defects

Congress established a specific, multistep procedure to be followed before an enhanced sentence is imposed based on a prior felony drug conviction. Pursuant to the statute, for an enhanced sentence to be imposed, the government must first file and serve on the defendant, before trial or guilty plea, an information "stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). If the defendant is then found guilty of, or pleads guilty to, the underlying offense, the court must ask the defendant, after conviction but before sentence is imposed, "whether he affirms or denies that he has been previously convicted as alleged in the information." Id. § 851(b). At the same time, the court also "shall inform [the defendant] that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." Id.

At the next step in the procedure, if the defendant "denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information." Id. § 851(c)(1). Following receipt of that response, the court must "hold a hearing to determine any issues raised by the response which would except the person from increased punishment." Id. At that hearing, the government "shall have the burden of proof beyond a reasonable doubt on any issue of fact."[3] Id.; see also Alsol v. Mukasey, 548 F.3d 207, 211 (2d Cir. 2008).

The court did not follow these procedures meticulously. The government timely filed and served a prior felony information in advance of Laiz's guilty plea. At his guilty plea proceeding, although the magistrate judge advised him of the pendency of the information and of the enhanced potential sentence that it triggered, the court did not ask Laiz to affirm or deny the accuracy of the allegation that he had previously been convicted of a narcotics felony.[4] Although it might have been expected that Laiz would

---

[3] Section 851(c)(2) further requires a person "claiming that [the alleged prior] conviction . . . was obtained in violation of the Constitution" to state the factual basis for his claim "with particularity in his response to the information." In such cases the defendant "shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response." 21 U.S.C. § 851(c)(2). Since Laiz does not contest the constitutionality of the alleged prior conviction, this provision has no application here.

[4] The statute does not require the court to make this inquiry at the plea proceeding, or at any other particular time, so long as the inquiry is made "after conviction but before pronouncement of sentence." 21 U.S.C. § 851(b). Since the inquiry was eventually made before sentence was pronounced, the district court complied with this requirement. As the eventual confusion in this case illustrates, however, it would seem preferable not to postpone the inquiry until the scheduled sentencing date. While challenges to the prior felony may be infrequent, if the defendant denies the conviction at that time, and invokes his statutory right to make a written objection and put the government to its proof, an

13

have denied the existence of the prior conviction in his general sentencing submission if he did not believe the charge was accurate, we cannot say that his failure to do so at that stage waived his objection; under the statute, Laiz was not required to make a formal response to the prior felony information until after the inquiry contemplated by the statute was made by the court. Thus, on the date set for sentencing, some ambiguity remained as to the full extent of Laiz's objections to the applicability of the enhanced penalty provision.

Section 851 clearly requires that before a sentence is imposed, the court must ask the defendant personally to affirm or deny whether he has been previously convicted as set forth in the information. In conjunction with this inquiry, the defendant is entitled to a warning that any challenge to the fact of his conviction must be made before sentence is imposed and that any objection not made before sentencing will be precluded. 21 U.S.C. § 851(b). If the defendant denies the conviction, he must serve a written response on the government setting forth his objection. Id. § 851(c). The court is then positioned to hold a hearing at which the government can present its proof. Id.

Here, however, the court did not make the required inquiry until considerable confusion about Laiz's position had already been generated. Laiz was never advised of

---

unexpected adjournment is nearly inevitable. Ascertaining whether the defendant intends to make such a challenge in advance of the sentencing date would therefore seem to be the better approach. Moreover, given that the defendant will have been served with the prior felony information in advance of trial, there is no obvious reason why the defendant cannot be asked to affirm or deny the prior conviction as part of the plea allocution, or, in the case of trial, immediately after receipt of the guilty verdict, before a sentencing date is set.

the need to object on pain of forfeiting his objection, or given the opportunity to elaborate his objections in writing. Moreover, instead of the hearing contemplated by the statute, at which the issues would be clearly posed by the defendant's written position and for which the government would have the opportunity to prepare to meet the objections raised, the only "hearing" here was an impromptu inquiry – held before the defendant had even been asked to take a formal position – in which the court reviewed certain documents provided by the government, without addressing the obvious discrepancies in those documents, which the court itself noted in the course of reading them, or giving the defendant an opportunity to review and comment on them. The court did not specify whether it applied the beyond-a-reasonable-doubt standard specified in the statute in finding that Laiz in fact had a prior narcotics conviction, or whether it applied some lesser standard in light of Laiz's failure properly to deny the conviction or to set forth his objection clearly in writing. Indeed, the court did not explicitly make any finding at all that Laiz was the person whose prior conviction was reflected in the government's documents.

To be sure, Laiz himself caused much of the confusion here. Neither he nor his attorney made clear in advance of the sentencing that they intended to challenge the fact of the prior conviction. When the court did finally ask the defendant to respond formally to the prior felony information, Laiz, on his attorney's advice, declined to answer.

The statute does not contemplate this approach, and gives no guidance on the procedures to be followed when a defendant refuses to affirm or deny. It could be argued that by not affirming the prior conviction Laiz effectively denied it. The inquiry required

15

by § 851(b) could be analogized to an arraignment on a criminal charge.  At the arraignment, the defendant is asked to respond to the charge by pleading guilty or not guilty; if he refuses to enter a plea, under Rule 11(a)(4), "the court must enter a plea of not guilty."  Fed. R. Crim. P. 11(a)(4).  Unlike Rule 11(a)(4), however, § 851(b) does *not* expressly provide that a refusal to plead shall be treated as equivalent to a denial of the prior felony information.  To the contrary, it requires a defendant who wishes to deny the information to set forth his position in writing in advance of any hearing – a procedure quite different from that by which the issues raised by a not-guilty plea are resolved.

Moreover, the constitutional background to the two situations is quite distinct.  When the government charges a defendant with a crime, the defendant has a constitutional right to stand mute, and the government is constitutionally required to prove the charge beyond a reasonable doubt – a burden of which it is relieved only if the defendant pleads guilty in a proceeding to which stringent protections are applied.  See Fed. R. Crim. P. 11(b) (setting forth procedural requirements for guilty pleas).  Anything less than a guilty plea, including an ambiguous answer or a refusal to plead, does not relieve the government of its burden of proof.  In contrast, "where a statute provides for an enhanced penalty based on a defendant's prior convictions, the fact of those convictions is a sentencing factor to be determined by the court rather than a jury," United States v. Snype, 441 F.3d 119, 148 (2d Cir. 2006), and – as far as the Constitution is concerned – sentencing factors "can be proved to a judge at sentencing by a preponderance of the evidence."  United States v. O'Brien, 130 S. Ct. 2169, 2174 (2010).

See generally Almendarez-Torres v. United States, 523 U.S. 224 (1998).[5] While § 851(c)(1) requires the government to prove contested facts relating to the prior felony beyond a reasonable doubt, that burden is triggered only where the defendant denies the prior felony and submits a written response raising a factual issue. 21 U.S.C. § 851(c)(1). The statute, moreover, specifically requires the court to warn the defendant that failure to challenge the fact of the prior conviction before sentencing waives any such challenge thereafter. Id. § 851(b). We therefore do not assume that ambiguous answers or refusals to answer a § 851 inquiry should be treated as tantamount to a denial.

Nevertheless, on the facts of this case, we are loath to find that Laiz's failure to enter a proper denial waived his right to challenge the prior felony. Once the court asked Laiz to affirm or deny the prior conviction, the statute required the court to give him the opportunity to enter a written objection, and to advise him that any objection not made before sentence was imposed could not be raised thereafter. The court did neither. We are not persuaded by the government's argument that it was up to Laiz to raise his factual objections to the information in advance of the sentencing hearing. The statute does not require a defendant to respond to the prior felony information sua sponte. Rather, § 851 specifically requires that a defendant first be asked to affirm or deny the allegations in the information, and *then* be given an opportunity to file objections, after a specific advice of

---

[5] As a matter of constitutional law, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Although "the continued viability of Almendarez-Torres has been questioned," we have held that Apprendi "preserved the holding in Almendarez-Torres." Snype, 441 F.3d at 148.

the consequences of failing to act. "The purpose of § 851(b) is to place the procedural onus on the district court to ensure defendants are fully aware of their rights." United States v. Baugham, 613 F.3d 291, 296 (D.C. Cir. 2010).

In addition, the impromptu hearing held by the court fell short of the type of hearing contemplated by § 851. Section 851 contemplates that prior to a hearing, a defendant's written response to the information will notify the government what facts are disputed, thus giving the government an opportunity to prepare for a hearing on those facts. The government had no such notice here, because the court gave Laiz no opportunity to file a written response. Instead, the court had already examined the government's evidence before formally inquiring whether Laiz affirmed or denied the prior conviction, without giving either party an opportunity to address the manifest ambiguities in the documents proffered by the government, or clearly advising the parties that a "hearing" was being held. That procedure does not accord with the statute.[6]

Failure to adhere to the letter of § 851's procedures does not automatically invalidate the resulting sentence. Those of our sister circuits that have addressed the issue have concluded that § 851(b) and (c) procedural deficiencies are subject to harmless error review. See, e.g., United States v. Henderson, 613 F.3d 1177, 1184 (8th Cir. 2010); Baugham, 613 F.3d at 296; United States v. Henry, 519 F.3d 68, 74 (1st Cir. 2008); United States v. Ellis, 326 F.3d 593, 599 (4th Cir. 2003); United States v. Williams, 298

---

[6] We are sympathetic to the challenges the district court faced here in trying to comply with § 851's procedures. Neither the statute nor controlling precedent gives clear guidance when a defendant refuses to affirm or deny an alleged prior conviction. In the absence of guidance, the district court appears to have made its best efforts to proceed with the sentencing, which was already underway, fairly and expeditiously.

18

F.3d 688, 693 (7th Cir. 2002); United States v. Hill, 142 F.3d 305, 313 (6th Cir. 1998); United States v. Lopez-Gutierrez, 83 F.3d 1235, 1246 (10th Cir. 1996); United States v. Fragoso, 978 F.2d 896, 902-03 (5th Cir. 1992). We follow their lead in concluding that there is no reason why non-prejudicial errors in complying with the procedural requirements of § 851 should require reversal.[7]

At the same time, however, the procedures set forth in the statute are not insignificant, and failure to apply them can result in considerable prejudice to a defendant. As the Fifth Circuit has noted:

> One purpose of § 851(b) is to insure that a defendant knowingly and voluntarily waives his right to challenge the previous conviction used to enhance his sentence before that conviction becomes immune from challenge by operation of the enhancement statute. The ritual required by § 851(b) is a functional one, and its omission can result in very real prejudice to a defendant who learns only after he attempts to challenge the prior conviction that that conviction has become unassailable.

United States v. Cevallos, 538 F.2d 1122, 1128 (5th Cir. 1976). We cannot say that the

---

[7] Some of our sister circuits have held that only plain error review is available where the defendant has not objected to § 851 procedural deficiencies below. See, e.g., United States v. Dickerson, 514 F.3d 60, 65 (1st Cir. 2008), citing United States v. Craft, 495 F.3d 259, 265 (6th Cir. 2007); United States v. Mata, 491 F.3d 237, 244 (5th Cir. 2007); Ellis, 326 F.3d at 598. Laiz does not appear to have objected to the procedural deficiencies, so it might be appropriate to review for plain error. But the government does not so argue. And at least one sister court has argued that the logic behind reviewing unpreserved claims for plain error – preventing parties from wasting judicial resources by holding possible trial errors in reserve in hopes of raising them on appeal – does not apply to § 851(b) procedural deficiencies, because one purpose of § 851(b) is to ensure that the defendants are fully aware of their rights. Baugham, 613 F.3d at 296 ("To penalize a defendant for not alerting the district court to its failure to alert him would pervert the statute and get it exactly backward."). Since the government has not contended that only plain error review is appropriate, we do not decide the standard of review, and proceed to address solely whether the errors in the proceeding were prejudicial or harmless.

procedural defects here were harmless. The court's determination that Laiz had a prior felony drug conviction added ten years to Laiz's statutory mandatory minimum sentence. And the defects in the § 851 procedures that led to that determination potentially affected the determination in at least two significant ways.

First, the failure to provide the statutorily required warning of the effect of failing to make a proper challenge to the prior felony information may well have influenced Laiz's unusual choice not to affirm or deny the allegations in the information. This in turn may well have affected the burden of proof to which the government was or should have been held. We cannot know what Laiz would have done had he received an opportunity to submit a written response to the information and been warned about the consequences of failing to do so, but given Laiz's ambiguous position at the sentencing proceeding, and his attorney's evident failure to anticipate the issue, it is at least possible that, had he been given the proper opportunity and warning, he would have filed a written response. Such a response would have necessitated proof by the government of any contested fact issue beyond a reasonable doubt. See 21 U.S.C. § 851(c)(1). As noted above, it is not clear that the district court found beyond a reasonable doubt that Laiz was the person convicted of a narcotics felony in Massachusetts in 1993, and it is an open question whether, in the absence of a proper denial, the enhanced burden of proof applied.[8]

_____

[8] We have never decided what burden of proof applies in that unusual situation (and we have found no case in which any other court has passed on the issue). In Alsol v. Mukasey, 548 F.3d 207 (2d Cir. 2008), we stated that "[i]f a defendant *does not admit* his prior conviction, the government must prove the existence of the prior conviction beyond a reasonable doubt." Id. at 211 (emphasis added). But that was dictum in a case that did

20

Because we remand for resentencing, we need not decide whether § 851's requirement of proof beyond a reasonable doubt applies when a defendant neither affirms nor denies a prior conviction. It suffices to note that we cannot discern what standard of proof the district court applied. If the failure to follow the procedures set forth in the statute caused Laiz to fail to file a written response that would clearly have triggered the beyond-a-reasonable-doubt standard, the potential prejudice from that failure is clear.

Second, the failure to follow the statutory procedure compromised the reliability and thoroughness of the "hearing" conducted by the district court. Because Laiz had no opportunity to file a written response, neither he nor the government was prepared for the impromptu hearing that the court held. That procedure undermined the reliability of the resulting findings. The court based its conclusion not on a careful inquiry into whether Laiz was indeed the man convicted in the prior Massachusetts case, but merely on whatever evidence the government happened to have on hand – documents the defense may not even have seen in advance of the hearing, and on which Laiz was given no real opportunity to comment.[9] The district court's inexplicit finding at the end of this

not turn on what burden of proof applied when a defendant neither affirms nor denies an alleged prior conviction.

[9] In addition to potentially harming Laiz, the impromptu procedure also denied the government a fair opportunity to prove Laiz's alleged prior conviction at a hearing of the sort that § 851 contemplates. The government had no notice of the hearing here, because the court immediately requested the government's evidence when Laiz refused to admit the prior conviction. If specific facts had been put in issue by the statutorily contemplated denial and written objection, additional follow-up on the documents on hand in anticipation of a hearing might well have produced more definitive proof that Laiz in fact was – or was not – the person convicted in Massachusetts. Without notice that the fact of the prior conviction would be put in issue, the government did not have a fair opportunity to gather and present its best evidence of Laiz's prior conviction.

truncated hearing that Laiz had a prior felony conviction may or may not be sustainable, if that is all the evidence that the government can present at a proper hearing after appropriate notice to both sides. But in view of the poor quality of the government's evidence, that decision was a close one that is not beyond question. Thus, the failure to follow the required procedure resulted in a less-than-rigorous presentation of the evidence that undermines our confidence in the result. Considering that a ten-year sentencing enhancement turns on the outcome of the § 851 procedure, the failure to comply fully with the statute's procedural requirements should not casually be deemed harmless error.

Accordingly, instead of affirming the decision reached by the district court after undertaking defective § 851 procedures and reviewing somewhat shaky evidence (as the government requests), or finding the evidence insufficient, striking the prior felony information, and remanding for imposition of a ten-year sentence (as Laiz demands), we think the proper course is to vacate Laiz's sentence and to remand for resentencing. On remand, the proper procedures can be followed. If Laiz persists in refusing to affirm or deny the prior conviction, he should be advised of the consequences of failing to raise any objection that he has. If he denies the prior conviction, he should be given an opportunity to file a written response, and if that response raises issues of fact to be resolved at a hearing, the government should have the chance to marshal and present its best evidence to prove the disputed facts beyond a reasonable doubt.[10]

---

[10] Of course, it is possible that, having had a fair opportunity to reflect on the allegations in the prior felony information, and possibly having his memory refreshed by the government's evidence, Laiz may now recall, and might therefore choose to affirm, his prior conviction.

**CONCLUSION**

For the foregoing reasons, the judgment of conviction is affirmed, and his sentence is vacated and remanded for further proceedings consistent with this opinion.