**18-2545-cr**
*United States v. Thompson*

# In the
# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM, 2019

ARGUED: OCTOBER 2, 2019
DECIDED: JUNE 8, 2020

No. 18-2545-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

JEREMY L. THOMPSON,
*Defendant-Appellant.*[*]

————

Appeal from the United States District Court
for the Northern District of New York.

————

Before: WALKER and CARNEY, *Circuit Judges*, and KOELTL, *District Judge.*[†]

————

---

[*] The Clerk of Court is respectfully directed to amend the official caption as listed above.
[†] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

Defendant-Appellant Jeremy L. Thompson appeals from a sentence entered in the United States District Court for the Northern District of New York following his conviction on one count of conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The district court (Norman A. Mordue, *Judge*) sentenced Thompson to ten years' imprisonment pursuant to § 841(b)(1)(B), which specified a mandatory minimum of ten years' imprisonment for defendants with a prior conviction for a felony drug offense. The district court had concluded that Thompson's prior conviction for the attempted sale of a controlled substance in the fifth degree, in violation of N.Y. Penal Law § 220.31, was a conviction for a "felony drug offense," as defined by 21 U.S.C. § 802(44). We find that the district court erred in treating Thompson's prior § 220.31 conviction as a predicate felony drug offense under the categorical approach because § 220.31 criminalized conduct beyond the scope of the federal analog. We therefore VACATE the district court's sentence and REMAND for resentencing.

_____

STEVEN D. CLYMER (Carl G. Eurenius, *on the brief*), Assistant United States Attorneys, *for* Grant C. Jacquith, United States Attorney for the Northern District of New York, *for Appellee*.

JAMES L. RIOTTO II, James L. Riotto II, Esq., Rochester, NY, *for Defendant-Appellant*.

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant-Appellant Jeremy L. Thompson appeals from a sentence entered in the United States District Court for the Northern District of New York following his conviction on one count of conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The district court (Norman A. Mordue, *Judge*) sentenced Thompson to ten years' imprisonment pursuant to § 841(b)(1)(B), which specified a mandatory minimum of ten years' imprisonment for defendants with a prior conviction for a felony drug offense. The district court had concluded that Thompson's prior conviction for the attempted sale of a controlled substance in the fifth degree, in violation of N.Y. Penal Law § 220.31, was a conviction for a "felony drug offense," as defined by 21 U.S.C. § 802(44). We find that the district court erred in treating Thompson's prior § 220.31 conviction as a predicate felony drug offense under the categorical approach because § 220.31 criminalized conduct beyond the scope of the federal analog. We therefore VACATE the district court's sentence and REMAND for resentencing.

## BACKGROUND

On April 17, 2018, Thompson pled guilty to one count of conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The day before his plea hearing, the government filed a sentencing enhancement information pursuant to 21 U.S.C. § 851, alerting the district court to Thompson's 2002 conviction for the attempted

criminal sale of a controlled substance in the fifth degree, in violation of N.Y. Penal Law (NYPL) § 220.31.  NYPL § 220.31 criminalizes the sale of any of the hundreds of controlled substances enumerated in N.Y. Pub. Health Law § 3306.

At his plea hearing, Thompson admitted to the 2002 conviction but contested whether a violation of NYPL § 220.31 was a "felony drug offense" that would trigger the sentencing enhancement in § 841(b)(1)(B).  The district court ordered Thompson to file a written response to the government's sentencing enhancement information.  Thompson's written response argued that (1) the district court was required to use the categorical approach to determine whether his NYPL § 220.31 violation was a felony drug offense and that (2) NYPL § 220.31's criminalization of the sale of certain compounds, notably human chorionic gonadotropin (hCG), swept more broadly than the federal definition of a felony drug offense and thus precluded a prior-conviction sentencing enhancement.  The government replied, arguing that the district court was not required to use the categorical approach and appending documents showing that Thompson's 2002 offense of conviction involved cocaine.

On August 17, 2018, the district court issued a decision and order rejecting Thompson's arguments.  The district court held that it was not required to apply the categorical approach, but that even if it were, Thompson's claim would fail because "one of the uses of [hCG] is by men who are 'using anabolic steroids in order to restore natural testosterone production.'"[1]  Therefore, hCG "is sufficiently related to anabolic steroids to fall within the federal statute."[2]  Using the 2002

---

[1] App'x at 94.

[2] *Id.*

conviction under NYPL § 220.31 as a predicate felony drug offense, the district court sentenced Thompson to ten years' imprisonment, as required by the sentencing enhancement's mandatory minimum.[3]  This appeal followed.

## DISCUSSION

On appeal, Thompson primarily challenges the district court's determination that his prior conviction under NYPL § 220.31 was a predicate felony drug offense for the purpose of the § 841(b)(1)(B) sentencing enhancement. The resolution of Thompson's appeal requires answering two questions: (1) whether the categorical approach applies to the identification of felony drug offenses; and (2) if so, whether NYPL § 220.31 offenses are a categorical match for felony drug offenses.

The categorical approach "requires [a district court] to look to the elements and the nature of the offense of conviction, rather than to the particular facts

---

[3] The First Step Act, enacted on December 21, 2018, amended § 841(b)(1)(B) such that a mere "felony drug offense" no longer triggers the sentencing enhancement implicated here.  Pub. L. No. 115-391, § 401(a)(2)(B), 132 Stat. 5194, 5220–21 (2018).  As amended, the sentencing enhancement is available only when a defendant has "a prior conviction for a serious drug felony or serious violent felony."  *Id*.  Serious drug felonies include "offense[s] under State law . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A).  NYPL § 220.31 specifies that the criminal sale of a controlled substance in the fifth degree is a "class D felony," the sentence for which "shall not exceed seven years."  NYPL § 70.00. A violation of NYPL § 220.31 is therefore not a serious drug felony under the First Step Act. Thompson, however, was sentenced several months before the First Step Act was enacted.  The First Step Act's amendments to § 841(b)(1)(B) are non-retroactive, Pub. L. No. 115-391, § 401(c), 132 Stat. at 5221, and therefore Thompson cannot benefit from their heightened threshold for the imposition of § 841(b)(1)(B)'s sentencing enhancement.

relating to [the defendant's] crime."[4]  It then "asks whether the least of conduct made criminal by [a] state statute falls within the scope of activity that the federal statute penalizes."[5]  Thus, if the categorical approach applies, a district court must consider only the fact of Thompson's prior conviction under NYPL § 220.31, not the fact that Thompson's prior conviction involved cocaine.  The district court must then examine whether Thompson's NYPL § 220.31 offense is a categorical match[6] for a felony drug offense.  Our review of the district court's analysis raises questions of law, which we review *de novo*.[7]

### A.    Does the categorical approach apply?

The district court declined to apply the categorical approach, noting that neither the Supreme Court nor the Second Circuit has definitively mandated using the categorical approach to identify a prior "felony drug offense," as defined in 21 U.S.C. § 802(44).  The district court located support for a circumstance-specific analysis in 21 U.S.C. § 851(c), which it asserted "provides an explicit fact-finding mechanism for courts to determine whether to impose increased punishment by reason of a prior conviction, based on the evidence supported by the parties," and "must be read alongside" § 841(b)(1)(B).[8]

---

[4] *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004).

[5] *Stuckey v. United States*, 878 F.3d 62, 67 (2d Cir. 2017).

[6] To be a "categorical match," the prior state offense must be parallel to or narrower than the federal analog.

[7] *See Stuckey*, 878 F.3d at 65 (reviewing *de novo* a district court's categorical approach analysis).

[8] App'x at 91.

We disagree with the district court's analysis and conclusion. The text, history, and past implementation of §§ 841(b)(1)(B), 851(c), and 802(44), strongly counsel in favor of using the categorical approach.

The relevant statutory text is centered upon the fact of conviction and not the facts supporting that conviction. Section 841(b)(1)(B) states that its sentencing enhancement is triggered "after a prior conviction for a felony drug offense."[9] Section 841(b)(1)(B) is concerned only with the question of whether or not a defendant has a prior conviction, not with its underlying factual details. Section 851(c) is likewise concerned with the same binary question. In relevant part, § 851(c) allows a defendant to "den[y] any allegation of the information of prior conviction, or claim[] that any conviction alleged is invalid." Under 21 U.S.C. § 851(a), a sentencing enhancement information must "stat[e] in writing the previous convictions to be relied upon." Neither § 851(a) nor § 851(c) speaks to an information that addresses the details of how a defendant committed the prior crime. Our § 851(c) case law is consistent with this textual analysis. In *United States v. Espinal*, we identified the purpose of fact-finding under § 851(c) as determining "whether [the defendant] was indeed the man convicted in the prior . . . case."[10] This determination is separate from, and § 851(c) therefore is not concerned with, the circumstances of the prior offense.

Similarly, § 802(44) defines a felony drug offense as a violation of "any law of the United States or of a State or foreign country that prohibits or restricts

---

[9] In relevant part, 21 U.S.C. § 841(b)(1)(B) reads: "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years."

[10] 634 F.3d 655, 667 (2d Cir. 2011).

conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."[11] Section 802(44) plainly refers to the terms of the statute of conviction, not to the conviction's underlying circumstances. We cannot see how the language of § 802(44) could be construed to refer to the offense conduct.

The language in §§ 841(b)(1)(B), 851(c), and 802(44) is analogous to the language at issue in the first Supreme Court case requiring use of the categorical approach, *Taylor v. United States*. That case involved a statute referring to "'a person who . . . has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses."[12] As in *Taylor*, the language here is concerned with the existence of a valid prior conviction and the statute of conviction. Accordingly, this language "generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions."[13]

Looking beyond the text, we agree with the Eighth Circuit in *United States v. Dennis Brown* that there is "no indication in the . . . [statutory] history of [§ 841(b)(1)] that a particular state offense might sometimes count toward the

---

[11] In relevant part, 21 U.S.C. § 802(44) reads: "The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

[12] 495 U.S. 575, 600 (1990).

[13] *Id.*

sentencing enhancement and sometimes not, depending on the facts of the case."[14] Previous iterations of § 841(b)(1)(B) support the use of the categorical approach. Upon its enactment in 1970, § 841(b)(1)(B)'s sentencing enhancement was triggered when a person had "one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this title [II] or title III or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances."[15]  Congress plainly did not intend for courts to use a circumstance-specific approach to determine whether defendants had prior convictions under Title II or Title III.  Under the interpretive maxim of *noscitur a sociis*, "a word is known by the company it keeps,"[16] we can then infer that Congress likewise eschewed a circumstance-specific approach when in the same provision it tied the sentencing enhancement to "a felony under any . . . other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances."  In 1994, Congress moved the language explaining which prior convictions triggered § 841(b)(1)'s sentencing enhancement to § 802(44), a general federal definition of "felony drug offense."[17] Nothing in the statutory history suggests that Congress departed from its original categorical approach in doing so.

---

[14] 598 F.3d 1013, 1017 (8th Cir. 2010) (analyzing § 841(b)(1)(A), which mirrors and was adopted alongside § 841(b)(1)(B)).

[15] Pub. L. No. 91-513, § 401, 84 Stat. 1236, 1261 (1970).

[16] *Yates v. United States*, 574 U.S. 528, 543 (2015).

[17] Pub. L. No. 103-322, § 90105, 108 Stat. 1796, 1988 (1994); *see also Burgess v. United States*, 553 U.S. 124, 133 (2008) (describing the evolution of the definition of "felony drug offense").

Consistent with the text and history of § 841(b)(1)(B) and related sections, albeit without explicitly deciding that the categorical approach applies, this circuit has used the categorical approach to determine whether a defendant had a prior felony drug conviction.[18] In *McCoy v. United States*, we referred to the use of the categorical approach in this context as our "long-accepted" practice.[19] Both the Seventh and Eighth Circuits, after thorough analysis, found the categorical approach applicable to § 841(b)(1)(A), which mirrors § 841(b)(1)(B), and § 802(44).[20] The First, Third, and Ninth Circuits have also applied the categorical approach to identify felony drug offenses, although they have not explained their reasons for doing so.[21] Only the Sixth Circuit, in an unpublished opinion that cites no authority and provides no rationale, has declined to apply the categorical approach to identify felony drug offenses.[22]

---

[18] *See, e.g., United States v. Roman*, 464 F. App'x 32, 35 (2d Cir. 2012) (determining that the defendant's prior New York state conviction "plainly qualifies as a felony drug offense under the categorical approach"); *United States v. Davis*, 561 F. App'x 50, 53 (2d Cir. 2014) (affirming a district court judgment after the district court "us[ed] the modified categorical approach" to determine that the defendant was convicted of a felony drug offense).

[19] 707 F.3d 184, 188 (2d Cir. 2013) (per curiam).

[20] *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018); *Dennis Brown*, 598 F.3d 1013.

[21] *See, e.g., United States v. Gary Brown*, 500 F.3d 48, 59 (1st Cir. 2007); *United States v. Aviles*, 938 F.3d 503, 511 (3d Cir. 2019); *United States v. Ocampo-Estrada*, 873 F.3d 661, 667 (9th Cir. 2017).

[22] *United States v. Soto*, 8 F. App'x 535, 541 (6th Cir. 2001) ("[T]his court does not employ a categorical approach to determining whether a prior conviction constitutes a 'felony drug offense' for purposes of section 841(b)(1).").

Using the categorical approach in this context also avoids Sixth Amendment and practical concerns.[23]  As the Supreme Court explained in *Descamps v. United States*, the categorical approach has "Sixth Amendment underpinnings" because, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury."[24] The Sixth Amendment "counsel[s] against allowing a sentencing court to make a . . . determination about what the defendant and . . . judge [or jury] must have understood as the factual basis of the prior [conviction]."[25]  Adopting a circumstance-specific approach here would require sentencing courts to do just that, even to the point of requiring a separate trial on the question.  Given the wealth of textual and historical evidence supporting the use of the categorical approach to identify felony drug offenses for sentencing enhancement purposes, we decline to interpret §§ 841(b)(1)(B) and 802(44) in a way that would raise serious Sixth Amendment questions.

### B.    Are NYPL § 220.31 offenses a categorical match to § 802(44)'s definition of felony drug offense?

Having determined that the categorical approach applies, we turn to whether Thompson's NYPL § 220.31 offense is a categorical match for a felony drug offense under § 802(44), the federal analog.  We conclude that it is not because NYPL § 220.31 criminalizes conduct beyond the federal analog.  NYPL § 220.31 prohibits the sale of the controlled substances enumerated in N.Y. Pub. Health

---

[23] *See Elder*, 900 F.3d at 499.

[24] 570 U.S. 254, 269 (2013) (internal quotation marks omitted).

[25] *Id*. (internal quotation marks omitted).

Law § 3306.  In *Harbin v. Sessions*, we held that NYPL § 220.31 is an "indivisible" statute that "creates only a single crime"; that single crime can be violated by selling any of the N.Y. Pub. Health Law § 3306 substances.[26]  In other words, the district court must treat Thompson's prior violation of NYPL § 220.31 as a "criminal sale of a controlled substance in the fifth degree."  It cannot look to Thompson's prior indictment to treat his violation as a "criminal sale of cocaine in the fifth degree" because that is not the crime established by NYPL § 220.31.

Thompson argues that NYPL § 220.31 is not a categorical match with § 802(44) because it regulates hCG, a pregnancy hormone that is not included in the federal analog § 802(44).  That analog refers to laws "that prohibit[] or restrict[] conduct relating to narcotic drugs, marihuana, anabolic steroids, and depressant or stimulant substances."  Thompson argues that because a "criminal sale of a controlled substance in the fifth degree" could be an unlawful sale of hCG, rather than conduct relating to the four classes of controlled substances listed in § 802(44), a § 220.31 conviction cannot serve as a predicate conviction triggering § 841(b)(1)(B)'s sentencing enhancement.  We agree.

---

[26] 860 F.3d 58, 61, 64 (2d Cir. 2017).  N.Y. Pub. Health Law § 3306 enumerates hundreds of controlled substances, some more dangerous than others.  NYPL § 220.31 incorporates all of these hundreds of controlled substances and is a relatively low-level class D felony in the fifth degree. Because the provisions of New York law criminalizing the sale of controlled substances in the first through fourth degrees—NYPL §§ 220.43 (first degree), 220.41 (second degree), 220.39 (third degree), and 220.34 (fourth degree)—may be divisible and generally criminalize the sale of particularly dangerous substances, rather than the sale of any substance on N.Y. Pub. Health Law § 3306's lengthy list, our opinion does not consider or decide the status of sentencing enhancements predicated on New York convictions for the criminal sale of controlled substances in the first through fourth degrees.

To paper over the fact that hCG is not itself a narcotic drug, marijuana, an anabolic steroid, or a depressant or stimulant substance, the government engages in a strained reading of § 802(44) to argue that the illicit sale of hCG is "conduct relating to" anabolic steroids because some individuals take hCG alongside anabolic steroids to offset the steroids' suppression of their natural testosterone production.[27] While the language "relating to" has been "broadly interpreted" in other sentencing enhancement contexts,[28] we do not find the government's reading persuasive. There is no indication in § 802(44) that Congress enumerated four classes of controlled substances to capture the sale of a host of unenumerated chemical compounds that are not controlled substances but could ameliorate the side effects of controlled substances.[29] "[R]elating to" links "*conduct*" to "narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."[30] "[R]elating to" does not link other non-controlled substances or compounds to the forgoing enumerated classes of drugs. The government's reading would effectively define felony drug offenses as conduct relating to non-controlled substances or compounds relating to the enumerated classes of drugs. But that is not what § 802(44) says or does. "[R]elating to" in § 802(44) modifies "conduct"

---

[27] Government's Br. at 35.

[28] *United States v. Barker*, 723 F.3d 315, 322–23 (2d Cir. 2013) (per curiam).

[29] This is consistent with the absence of authority suggesting that § 802(44) is void for vagueness. *United States v. Mattler*, 751 F. App'x 86, 89 (2d Cir. 2018) (finding no support for the defendant's argument that the scope of "conduct relating to" § 802(44)'s four classes of drugs is "virtually limitless" and therefore void for vagueness).

[30] 21 U.S.C. § 802(44) (emphasis added).

only once, and the most plausible and common-sense reading of "conduct" is manufacturing, selling, possessing, and the like.

The Eighth Circuit has likewise rejected efforts to expand § 802(44)'s reach beyond its enumerated classes of drugs. In *Dennis Brown*, the Eighth Circuit recognized that "'relating to' has a 'broad ordinary meaning,' even in the criminal context," but held that "simulated narcotic drugs" still fall outside § 802(44)'s ambit.[31] The *Dennis Brown* majority pointed out that the state statute at issue could be violated "without ever possessing, distributing, or using a controlled substance and without having any involvement whatsoever with an actual narcotic drug," and thus did not categorically fit within the federal definition of felony drug offense.[32] The majority was not persuaded otherwise by "the close relationship between controlled substance offenses and simulated controlled substance offenses."[33]

As an alternative to its "relating to" argument, the government proposes that NYPL § 220.31, despite being broader than § 802(44), "substantially corresponds" to it and is therefore a categorical match. The government's substantially-corresponds-to theory takes language from *Taylor* out of context. In assessing generic burglary under 18 U.S.C. § 924(e), the *Taylor* Court held that "a[] [state] offense constitutes 'burglary for purposes of a § 924(e) sentence enhancement if . . . its statutory definition substantially corresponds to 'generic

---

[31] 598 F.3d at 1015, 1017.

[32] *Id.* at 1018.

[33] *Id.* at 1020 (Shepherd, J., dissenting).

burglary.'"[34]  But the context for this statement was the Court's concern about the status of "offenses under some States' laws that, while not called 'burglary,' correspond in substantial part to generic burglary" or offenses "in a State where the generic definition has been adopted, with minor variations in terminology."[35] *Taylor* uses an example that makes clear that its substantially-corresponds-to standard does not mean that all slightly overbroad state statutes can still serve as a categorical match.  Identifying "[a] few States' burglary statutes . . . [that] define burglary more broadly, *e.g.*, . . . by including places, such as automobiles and vending machines, other than buildings,"[36] the Court explained that the government could still use convictions under these slightly overbroad state statutes for the § 924(e) sentencing enhancement "*if* the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict.[37]  Notably, *Taylor*'s example separated out location of entry as a distinct element.  It follows that an overbroad state statute can serve as a categorical match if it is divisible into separate offenses, and the underlying indictment, information, or jury instructions (to which the sentencing court may turn when the state statute is divisible to ascertain the relevant crime to which the categorical approach will apply) reveal that the offense of conviction has elements no broader than those of the federal analog.[38]  The situation is different in this case.  As we have pointed

---

[34] 495 U.S. at 602.

[35] *Id*. at 599.

[36] *Id.*

[37] *Id.* at 602 (emphasis added).

[38] *Quarles v. United States* confirms this reading of *Taylor*.  139 S. Ct. 1872 (2019).  In *Quarles*, the Court considered whether Michigan third-degree home invasion "[1] is broader than generic

out, NYPL § 220.31 is both overbroad and indivisible. It therefore does not substantially correspond to § 802(44) as that language is used in *Taylor*.

Finally, the government maintains that the overbreadth of NYPL § 220.31 is purely hypothetical and the product of impermissible legal imagination. To be sure, such a characteristic would remove the supposed overbreadth from the calculation.[39] However, "when the state statute on its face reaches beyond the generic federal definition," no legal imagination is necessary to find that the state statute is overbroad.[40] Because hCG is included in New York's list of covered compounds at N.Y. Pub. Health Law § 3306, NYPL § 220.31 on its face criminalizes conduct that is not covered by the federal analog at § 802(44).

To summarize, we reject the government's capacious reading of § 802(44), as well as its attempt to narrow the scope of § 220.31, and do not find a categorical match. Accordingly, the district court erred in finding that Thompson's prior conviction under NYPL § 220.31 could serve as a predicate felony drug offense for the § 841(b)(1)(B) sentencing enhancement and in sentencing Thompson pursuant to that enhancement.

* * *

---

burglary or, instead, [2] 'substantially corresponds' to or is narrower than generic burglary." *Id*. at 1880. The Court's framing of this inquiry contrasts the state offense being broader than the federal analog with the state offense substantially corresponding to the federal analog. An overbroad and indivisible state offense cannot substantially correspond to a federal analog.

[39] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language.").

[40] *Williams v. Barr*, – F.3d –, 2020 WL 2745538, at *8 (2d Cir. May 27, 2020).

Thompson also appeals from the district court's decision to deny him a 21 U.S.C. § 851(c) hearing on the applicability of the categorical approach. Because we find for Thompson on his substantive argument, we have no need to address this secondary, procedural argument.

## CONCLUSION

For the reasons stated above, we VACATE the district court's sentence and REMAND for resentencing.